UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

NYSA SERIES TRUST; LEW RUMSMOKE;
LEAH GABELMAN, Trustee; GABELMAN
TRUST; GERALD E. FUESS; RICHARD
MARTIN; RICHARD B. ABBOTT; TERI
MARTIN; CHRISTOPHER MORRIS;
JACOB HULLER; SUSAN SCHWEITZER,
Trustee; SCHWEITZER LIVING TRUST;
EDWIN L. OLMSTEAD; ALTON PROSSER;
MICHAEL CUDDY; MICHAEL PFOHL;
ELIZABETH PFOHL; ANDREW MERRITT;
BRIAN LETCHER; WILLIAM PATTERSON,
Trustee; PATTERSON WAREHOUSE
EMPLOYEE; and PROFIT SHARING PLAN,

      Plaintiffs,

 -v-               5:14-CV-1089

ESPSCO SYRACUSE, LLC; PATRICK
DESSEIN; BRETT GREENKY, M.D.; SETH
GREENKY, M.D.; GLENN AXELROD, M.D.;
RICHARD ESPOSITO; and JOHN SACCO,
M.D.,

      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:          OF COUNSEL:

WHITE AND WILLIAMS LLP      JAY SHAPIRO, ESQ.
Attorneys for Plaintiffs        BRIAN M. OUBRE, ESQ.
One Penn Plaza          ZAREEF J. AHMED, ESQ.
250 W. 34th Street, Suite 4110
New York, NY  10119

LAW OFFICES OF PATRICIA C. FOSTER, PLLC PATRICIA C. FOSTER, ESQ.
Attorneys for Plaintiffs
170 Van Voorhis Road
Pittsford, NY  14534

PATRICK DESSEIN, pro se
122 Ruskin Avenue
Syracuse, NY 13207

HANCOCK ESTABROOK, LLP                    DANIEL B. BERMAN, ESQ.
Attorneys for Defendants Greenky, Greenky, NINA I. BROWN, ESQ.
   Axelrod, and Esposito
1500 AXA Tower I
100 Madison Street
Syracuse, NY 13202

MELVIN & MELVIN, PLLC                     J. MATTHEW VAN RYN, ESQ.
Attorneys for Defendant Sacco
217 South Salina Street, 7th Floor
Syracuse, NY 13202


DAVID N. HURD
United States District Judge

## **MEMORANDUM–DECISION and ORDER**

## I. **INTRODUCTION**

Each of the twenty-two named plaintiffs purchased debt securities offered for sale (the "Notes") by defendant ESPSCO Syracuse, LLC ("ESPSCO"), a limited liability company formed in Delaware and based in Syracuse, New York. On September 3, 2014, plaintiffs filed this action generally alleging that ESPSCO's owners and directors engaged in fraud and misconduct in connection with the sale and repayment of the Notes. They bring one federal claim for an alleged violation of section 10(b) of the Securities Exchange Act of 1934 ("First Cause of Action") as well as pendent state claims for fraud ("Second Cause of Action"), fraud in the inducement ("Third Cause of Action"), negligent misrepresentation ("Fourth Cause of Action"), breach of contract ("Fifth Cause of Action"), and unjust enrichment ("Sixth Cause of Action"). Plaintiffs seek restitution with pre-judgment interest.

On October 17, 2014, defendant Dr. John Sacco ("Sacco") filed a motion to dismiss

the complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants Dr. Brett Greenky ("B. Greenky"), Dr. Seth Greenky ("S. Greenky"), Dr. Glenn Axelrod ("Axelrod"), and Richard Esposito ("Esposito") filed a similar motion on October 31, 2014. Shortly thereafter, defendant Patrick Dessein ("Dessein"), proceeding *pro se*, filed a letter motion seeking to join the co-defendants' motions. The motions have been fully briefed.

Oral argument was heard on January 9, 2015, in Utica, New York. Decision was reserved.

## II. FACTUAL BACKGROUND

The following facts, taken from the Complaint and documents attached thereto, are assumed true for purposes of the motions to dismiss. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

### 1. ESPSCO and the Notes

On November 24, 2009, Dessein, B. Greenky, S. Greenky, and Axelrod formed ESPSCO to raise funds for an affiliated entity known as Syracuse Packaging International, LLC ("SPI"). Compl. ¶¶ 1, 49. Dessein served as ESPSCO's Chief Executive Officer; B. Greenky, S. Greenky, and Axelrod served as Managing Members. Id. ¶¶ 29–41. Sacco served on the Board of Managers of SPI. Id. ¶ 45.

ESPSCO sought to raise funds for SPI by offering $1,700,000 in Notes for sale to accredited investors in a private offering. Compl. ¶¶ 50–51. According to plaintiffs, defendants attempted to avoid the registration requirements of the Securities Act by structuring the offering as a private offering. ESPSCO's members provided interested parties, including plaintiffs, informational material about ESPSCO's ownership structure, the

terms under which the Notes would be sold, and how ESPSCO would use the funds raised (the "Offering Materials"). See Compl. Ex. A.

Specifically, the Offering Materials indicated that Dessein, B. Greenky, S. Greenky, and Axelrod each owned twenty-five percent (25%) of ESPSCO. Id. at 3.[1] These materials also indicated that purchasers would receive semi-annual interest payments valued at nine percent (9%) per year. Id. Moreover, the Offering Materials represented that SPI had "guarantied repayment of the Notes." Id. at 2. Finally, Appendix A of the Offering Materials, entitled "Risk Factors," noted: "If [ESPSCO] fails to make any payment when due under the Notes, the sole remedy of the Note holders will be limited to proceeding against SPI to recover full payment thereon." Id., App. A, ¶ 2.

Ultimately, ESPSCO raised a total of $1,150,000 by issuing Notes to eighteen different purchasers, including the named plaintiffs. Compl. ¶ 56.[2] In particular, plaintiff NYSA Series Trust ("NYSA Trust"), a mutual fund, purchased a Note valued at $100,000. Id. ¶ 63.

On January 1, 2012, ESPSCO defaulted on its obligation to pay interest on the Notes, and SPI failed to honor its obligation as guarantor. Compl. ¶ 65. Two of the named plaintiffs—NYSA Trust and Michael Cuddy ("Cuddy")—sued ESPSCO and SPI in New York State Supreme Court, Onondaga County, to recover losses from these breached obligations. NYSA Trust and Cuddy won a $166,836.23 judgment on April 17, 2012. See Compl. Ex. C.

---

[1] The pagination corresponds to the page numbers as assigned on CM/ECF. This convention will be used throughout the order for citations to exhibits.

[2] Exhibit B, attached to the Complaint, purports to list the various investors as well as the values of the Notes they purchased, but does not appear comprehensive. Further, although not mentioned in the Complaint, "Pinnacle Investments" reportedly brokered the sales of the Notes.

On June 29, 2012, NYSA Trust and Cuddy agreed to enter into a "Judgment Forbearance Agreement" (the "Forbearance Agreement") with ESPSCO and SPI in lieu of enforcing this state court judgment. Compl. ¶ 75. Although the Forbearance Agreement contained a revised repayment schedule for the outstanding Notes, ESPSCO and SPI quickly defaulted again. Id. ¶ 78. Plaintiffs filed this lawsuit on September 3, 2014.

### 2. Alleged Misconduct

First, plaintiffs allege defendants made material misstatements of fact in the Offering Materials. Among other things, this includes omissions of fact that misled plaintiffs into believing SPI could meet its financial obligations as guarantor of the Notes even though defendants knew SPI was unable to do so.

Second, plaintiffs allege defendants failed to use the funds raised from the sale of the Notes in ways the Offering Materials described they would be applied to ESPSCO's operations. Specifically, plaintiffs allege the Offering Materials failed to state that ESPSCO's management could—and would—divert the funds to SPI. In other words, defendants reportedly failed to capitalize and construct the customary financial infrastructure for ESPSCO and instead chose to commingle ESPSCO's and SPI's assets.

Third, plaintiffs allege defendants made false and misleading representations to induce them to agree to the revised payment schedule in the Forbearance Agreement. Specifically, plaintiffs allege defendants misrepresented ESPSCO's ability to continue operations after the state court judgment while simultaneously diverting funds to SPI and selling off substantially all of SPI's assets. SPI is currently the subject of an involuntary bankruptcy petition pending in the United States Bankruptcy Court for the Northern District of New York.

## III. **DISCUSSION**

Generally, plaintiffs allege that defendants engaged in fraud and misconduct in connection with the sale and repayment of the Notes and operated ESPSCO as an instrumentality or alter ego of SPI for the purpose of funding SPI, defrauding the investors, and unjustly enriching the members of SPI. There are two substantive pending motions to dismiss filed by (1) Sacco and (2) B. Greenky, S. Greenky, Axelrod, and Esposito.[3]

At oral argument, the parties focused on the First Cause of Action, which is the sole federal claim. They agree this claim involves only the Offering Materials and any alleged material misrepresentations or omissions contained therein. It does not touch upon the secondary allegations in the Complaint; to wit, the alleged fraudulent inducement regarding the Forbearance Agreement.

The First Cause of Action alleges violations of Section 10(b) of the Securities Exchange Act of 1934. This section forbids the "use or employ[ment], in connection with the purchase or sale of any security, . . . any manipulative or deceptive device or contrivance in contravention of" Securities and Exchange Commission rules and regulations. 15 U.S.C. § 78j(b). "Commission Rule 10b–5 forbids, among other things, the making of any 'untrue statement of a material fact' or the omission of any material fact 'necessary in order to make the statements made . . . not misleading.'" Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 341 (2005) (quoting 17 CFR § 240.10b–5). To state a claim for securities fraud under section 10(b), a plaintiff must allege: (1) a material misrepresentation or omission; (2) scienter; (3) a

---

[3] The remaining defendant, Dessein, is appearing *pro se*. He joins the motions to dismiss for the same reasons put forth by his co-defendants. In addition, he reports that he left SPI in June 2010, and resigned from his management position at ESPSCO and surrendered his shares in that company on September 9, 2010. He claims that he has not had any involvement in the management of either company or access to company information since his departure.

connection to the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) a causal connection between the misrepresentation or omission and the economic loss.  Id. at 341–42.

### A. Rule 12(b)(6) Motions to Dismiss—Legal Standard

Defendants argue that the Complaint must be dismissed, pursuant to Rule 12(b)(6), because it fails to state any claims upon which relief may be granted.  To survive a Rule 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), more than mere conclusions are required.  Indeed, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

Dismissal is appropriate only where plaintiffs have failed to provide some basis for the allegations that support the elements of their claims.  See Twombly, 550 U.S. at 570 (requiring "only enough facts to state a claim to relief that is plausible on its face").  When considering a motion to dismiss, the complaint is to be construed liberally, all factual allegations are to be deemed true, and all reasonable inferences must be drawn in the plaintiffs' favor. Chambers, 282 F.3d at 152.  Finally, a district court may consider documents attached to the complaint as exhibits or incorporated by reference therein. DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

### B. Sacco's Motion to Dismiss

Sacco argues that all claims against him must be dismissed because:  (1) plaintiffs fail to plead any facts specific to him in the fraud claims; (2) he was not a party to any contracts,

the Offering Materials, or the Forbearance Agreement[4]; (3) he played no role in creating the Offering Materials and was not a member of ESPSCO; and (4) as an affirmative defense, he claims certain portions of the Offering Materials contradict plaintiffs' fraud claims as a matter of law.[5]

Plaintiffs argue that Sacco—as a member of SPI's Board of Managers—was directly involved in the alleged fraud and misleading conduct.[6] However, there is nothing in the Complaint from which to reasonably infer that SPI or Sacco was involved in preparing, drafting, or distributing the Offering Materials that are at the heart the First Cause of Action. Nor is there any indication that he interacted with the potential investors in any manner. Instead, plaintiffs allege that Dessein, B. Greenky, S. Greenky, and Axelrod—not Sacco—"sought financing from 'accredited investors'" and "provided Offering Materials to potential purchasers." Compl. ¶¶ 50–51. Further, the company that reportedly brokered the sales of the Notes—Pinnacle Investments—is not a defendant in this action.

In short, plaintiffs do not put forth any factual allegations plausibly linking Sacco, either directly or through his involvement in SPI, to the alleged misrepresentations or omissions in the Offering Materials. Accordingly, Sacco's motion to dismiss the First Cause of Action as against him will be granted.

---

[4] He also invokes the Statute of Frauds for a similar reason—i.e. he is not a party to the Offering Materials and, therefore, plaintiffs cannot point to a written agreement that imposes any legal obligations upon him.

[5] Sacco also argues that plaintiffs fail to plead the fraud claims (First, Second, Third, and Fourth Causes of Action) with sufficient particularity as required by Rule 9(b). As the motion to dismiss will be resolved on other grounds, it is unnecessary to reach this argument.

[6] The parties vigorously dispute the level of management control Sacco enjoyed at SPI. Plaintiffs report that he had "complete domination of SPI" while Sacco claims he was merely a 10.52% owner/member of the company.

## C. **B. Greenky, S. Greenky, Axelrod, and Esposito's Motion to Dismiss**

B. Greenky, S. Greenky, Axelrod, and Esposito put forth two primary arguments in favor of their motion to dismiss the First Cause of Action. First, they assert that the plain language of the Offering Materials contradicts plaintiffs' fraud claims as a matter of law and the cautionary language contained therein adequately warned them of the risks associated with the investments. Second, they maintain that the First Cause of Action is barred by the statute of limitations.[7]

### 1. **Alleged Misrepresentations in the Offering Materials**

According to the Complaint, the main alleged misrepresentations/omissions in the Offering Materials involve: (1) the adequacy of the minimum investment amount to fund the proposed operation of ESPSCO; (2) the fact that funds would be "diverted" to SPI; and (3) the adequacy of SPI's capitalization for purposes of guaranteeing the investment. Each of these alleged flaws in the documents are belied by the plain language therein.

First, the Offering Materials state that "[a] minimum amount of $200,000 shall be required to be raised in order for the Company to complete a closing hereunder." Compl., Ex. A, 3. Plaintiffs claim this statement is misleading because "it creates an implication that the Minimum Amount will be sufficient to fund the operations of Defendant ESPSCO for a reasonable period of time." Compl. ¶ 84. Plaintiffs' interpretation mischaracterizes the

---

[7] Like defendant Sacco, these defendants also argue that plaintiffs fail to plead the fraud claims with sufficient particularity as required by Rule 9(b). As noted above, it is unnecessary to address this argument as the First Cause of Action will be dismissed on other grounds. Further, these defendants claim plaintiffs fail to plead any facts specific to B. Greenky, S. Greenky, Axelrod, or Esposito in connection with the alleged fraud or misrepresentations in the Offering Materials. Such is unpersuasive. The Complaint specifically alleges that these particular defendants, with Dessein, "sought financing from 'accredited investors'" and "provided Offering Materials to potential purchasers." Compl. ¶¶ 50–51. Thus, for purposes of the motion to dismiss, it is reasonable to infer that they were directly involved in drafting and creating the Offering Materials.

language of the Offering Materials, which simply explains that $200,000 is required before the closing may occur. It does not speak to the adequacy of funding for ESPSCO's operations, much less guarantee stability for any period of time.

Second, the Offering Materials report that:

The proceeds of this offering will be used to: (a) acquire the accounts receivables of SPI for factoring, (b) enter into a commercial loan with SPI, and (c) for general operating expenses of the Company. Any remaining proceeds will be used by the Company to pay expenses incurred in connection with this offering.

Compl., Ex. A, 3. Plaintiffs claim this provision is misleading because "it creates an implication that the acquisition of the SPI accounts receivable from SPI for factoring was the principal priority for the application of proceeds" and fails to advise of ESPSCO's retention of the ability to divert the proceeds to the working capital and management of SPI. Compl. ¶ 85. Again, plaintiffs' reading of the language is unsupportable. Nowhere in this provision do defendants prioritize the uses of the proceeds. Moreover, the second delineated use of the proceeds specifically contemplates "diverting" the funds to SPI via a commercial loan.

Third, in the Risk Factors section of the Offering Materials, potential investors are advised that "[i]f the Company fails to make any payment when due under the Notes, the sole remedy of the Note holders will be limited to proceeding against SPI to recover full payment thereon." Compl., Ex. A, App. A, ¶ 2. Plaintiffs claim that such is misleading because it "creates an implication that SPI is a going concern that is adequately capitalized to 'unconditionally' guarantee the punctual payment," fails to describe the "substantial risks" regarding SPI's financial stability, and omits the fact that SPI's managers would retain the ability to sell off SPI's assets. Compl. ¶ 86.

There are simply no material misrepresentations in this provision regarding SPI's

capitalization. It merely identifies SPI as guarantor and provides for the sole remedy in the event payment is not made. It does not promise an "unconditional" guaranty. Indeed, the Form of Guaranty specifically notes that "[t]his Guaranty shall be construed at all times to be a guaranty of payment and not a guaranty of collection." Compl., Ex. A, App. C, ¶ 3. Further, the Risk Factors section cautions that "[t]here can be no assurance that the net proceeds from these actions would be sufficient to pay the amounts due under the Notes." Compl., Ex. A, App. A, ¶ 2. Thus, plaintiffs' assertion that the Offering Materials improperly describes SPI's financial stability, misrepresents its management structure, and guarantees the Note holders' actual collection from SPI is unpersuasive.

In short, plaintiffs offer nothing but conclusory allegations to support their claims of fraudulent misrepresentation in the First Cause of Action. The alleged misrepresentations and/or omissions in the Offering Materials are belied by the language of the documents. Plaintiffs, as sophisticated investors, should have read and understood such plain language. Moreover, in light of the explicit cautionary language in the Risk Factors section of Appendix A, much of which addresses the very undisclosed risks of which plaintiffs complain, plaintiffs cannot now claim to have been unaware of the potential investment risks. See Halperin v. eBanker USA.com, Inc., 295 F.3d 352, 359 (2d Cir. 2002) (Cardamone, J.) ("[A] complaint fails to state a claim of securities fraud if no reasonable investor could have been misled about the nature of the risk when he invested.").

Accordingly, B. Greenky, S. Greenky, Axelrod, and Esposito's motion to dismiss will be granted with respect to the First Cause of Action.

### 2. Statute of Limitations

Even if plaintiffs stated a plausible fraudulent misrepresentation claim in the First

Cause of Action, such is barred by the statute of limitations. The parties agree that a claim asserted pursuant to section 10(b) of the Exchange Act must be brought no later than the earlier of: (1) "2 years after the discovery of the facts constituting the violation"; or (2) "5 years after such violation." 28 U.S.C. § 1658(b).

Defendants claim plaintiffs discovered or should have discovered that ESPSCO was not adequately capitalized or that SPI could not guarantee payments on January 1, 2012 (when the first default occurred); on April 17, 2012 (when NYSA Trust and Cuddy secured a state court judgment against ESPSCO and SPI); or on June 29, 2012 (when they entered into the Forbearance Agreement). Thus, according to defendants, the securities law claim should have been filed on or before June 29, 2014, at the latest. Plaintiffs maintain that they were not aware of the fraud until ESPSCO and SPI breached the Forbearance Agreement "in the first half of 2013," making this action timely when they filed the Complaint on September 3, 2014.

Plaintiffs' position is again unpersuasive. As detailed above, the alleged material misrepresentations and/or omissions in the Offering Materials involved: (1) the adequacy of the minimum investment amount to fund the proposed operation of ESPSCO; (2) the fact that funds would be "diverted" to SPI; and (3) the adequacy of SPI's capitalization for purposes of unconditionally guaranteeing the investment. Assuming, *arguendo*, that such misrepresentations and/or omissions existed, plaintiffs discovered or should have discovered same on or before June 29, 2012.

Indeed, according to the Complaint, ESPSCO defaulted on its obligation to pay interest on the Notes and SPI failed to honor its obligation as guarantor on January 1, 2012. This prompted at least two of the named plaintiffs—NYSA Trust and Cuddy—to sue

ESPSCO and SPI in state court to recover losses from these breached obligations. They won a $166,836.23 judgment on April 17, 2012. However, in lieu of enforcing that judgment, NYSA Trust and Cuddy entered into the Forbearance Agreement with ESPSCO and SPI on June 29, 2012. One of the purposes of the Forbearance Agreement was to "avoid the necessity of undertaking involuntary collection measures and threaten to [ESPSCO's and SPI's] solvency." Compl. Ex. D.

In short, plaintiffs knew or should have reasonably known about ESPSCO's and SPI's stability and questionable financial solvency on or before June 29, 2012, at the latest. Accordingly, the First Cause of Action will be dismissed as untimely in addition to the reasons explained above.

### D. Remaining State Law Claims

As the sole federal claim will be dismissed, the only claims that remain are the state law claims. At this early stage of the litigation, and pursuant to 28 U.S.C. § 1367(c)(3), supplemental jurisdiction over the remaining state claims is declined.

## IV. CONCLUSION

Even after accepting all factual allegations in the Complaint as true and making all reasonable inferences in plaintiffs' favor, defendant Sacco was not directly or indirectly involved in drafting, creating, or distributing the Offering Materials that form the basis of the First Cause of Action. Moreover, plaintiffs offer nothing but conclusory allegations to support their claims of fraudulent misrepresentation in the First Cause of Action. The alleged misrepresentations and/or omissions in the Offering Materials are belied by the language of the documents and the cautionary language detailed in the Risk Factors section. Finally, even if the fraudulent misrepresentation claim was adequately pleaded, such is barred by the

applicable statute of limitations.

Therefore, it is

ORDERED that

1. Defendant John Sacco, M.D.'s motion to dismiss is GRANTED;

2. Defendants Brett Greenky, M.D., Seth Greenky, M.D., Glenn Axelrod, M.D., and Richard Esposito's motion to dismiss is GRANTED;

3. Defendant Patrick Dessein's request to join the motions to dismiss is GRANTED;

4. The First Cause of Action—the only federal claim—is DISMISSED with prejudice; and

5. The remaining state law claims are DISMISSED without prejudice.

IT IS SO ORDERED.

The Clerk of the Court is directed to enter judgment accordingly and close the file.

United States District Judge

Dated: February 3, 2015
Utica, New York.